| JAMES L. CANNELLA, Judge.
The Defendant, William Nichols, appeals from his conviction of possession of cocaine and his enhanced sentence, as a third felony offender, to ten years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence and remand.
The Jefferson Parish District Attorney filed a bill of information charging the Defendant with possession with intent to distribute a controlled dangerous substance, cocaine, in violation of La. R.S. 40:967(A). On October 18, 2000, the Defendant waived his right to a jury trial and proceeded to a judge trial. The trial continued the next day and, at the conclusion of the State’s case, the Defendant moved to appoint a sanity commission to determine his competence to stand trial.
On April 19, 2001, the State and the Defendant stipulated to the report of the sanity commission and the trial judge ruled that the Defendant was competent to proceed. Trial resumed on September 18, 2001, at which time the Defendant moved for a new trial because he desired a jury trial. After denying the motion, trial recommenced with the testimony of an additional defense witness. On September 21, 2001, more defense witnesses testified and trial recessed until |sOctober 12, 2001. The State declined to call any rebuttal witnesses and the trial judge found the Defendant guilty of the lesser responsive offense of possession of cocaine, a violation of La. R.S. 40:967(C).
On October 25, 2001, the trial judge sentenced the Defendant to five years imprisonment at hard labor. On that same date the State filed a habitual offender bill of information, alleging him to be a third felony offender based on prior convictions of attempted armed robbery and attempted simple burglary. The Defendant denied the allegations in the bill of information. The Defendant made an oral motion for appeal, which the trial judge granted.[1]
*592 After a multiple offender hearing on July 11, 2002, the trial judge found the Defendant to be a third felony offender, vacated the original sentence, and imposed a sentence of ten years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The State objected to the sentence and informed the court that it would either appeal or seek supervisory writs on the court’s ruling.[2] On August 2, 2002, the State filed a Motion to Correct an Illegally Lenient Sentence, which the trial judge denied on November 14, 2002. The State noted its intent to appeal.[3] FACTS
At approximately 2:00 a.m. on November 19, 1999, State Troopers Flauss and Smith were on patrol in separate marked units on the West Bank of Jefferson Parish. At trial, Trooper Flauss testified that he and Trooper Smith were passing the 1300 block of Orange Blossom in Marrero, when the Defendant saw the police cars and ducked behind a building. The Defendant attempted to shove an object |4into his pocket and then fled toward a stairwell. The officers stopped their cars and ran behind the Defendant, who, at the top of the stairs, discarded a clear plastic bag containing green vegetable matter. The troopers followed the Defendant as he ran inside apartment number 1307. The Defendant stopped running and said, “I give up.” Trooper Smith arrested the Defendant for possession of marijuana and advised him of his constitutional rights. A search revealed nine white rock-like objects hidden in the Defendant’s sock. The officers thereafter advised the Defendant that he was also under arrest for possession of cocaine. These objects later tested positive for the presence of cocaine.
While inside the apartment, the officers observed a woman who had been asleep with a child on a mattress on the floor. Trooper Flauss testified that he did not see or recover any drugs from the apartment.[4]
The defense’s theory was that the drugs were found in the apartment, which was not the Defendant’s, and that the officers lied when they said that the drugs were found on the Defendant. The Defendant had several witnesses testify in support of his defense.
Tonyielle Brown (Brown), the Defendant’s girlfriend at the time, lived in apartment 1307. Her babysitter, Tranita Lewis (Lewis), was at the apartment on the evening in question while Brown was at work. According to Brown, the cocaine belonged to Corey Berry (Berry), who was the babysitter’s boyfriend. Although Brown testified that Berry said he left the cocaine in the apartment, Berry testified at trial that the contraband was already there when he visited Lewis that night at the apartment. Berry further testified that the cocaine was in nine pieces on the speaker and that there was marijuana on a plate behind the speaker. Berry denied that the cocaine belonged to him or to Lewis.
|BAccording to Berry, he arrived at the apartment around midnight. At some point, the Defendant knocked on the door, *593 but did not come inside. The Defendant and Berry walked downstairs and Berry went to talk to an acquaintance. Berry noticed the police driving by. He told the Defendant to go inside, because he knew the Defendant was on parole. Berry feared that the police might stop and “mess” with him. The police stopped, went up the stairs, and came down with the Defendant in handcuffs. According to Berry, the cocaine and marijuana were not in the apartment when the police left. Berry admitted that he was incarcerated for being a felon in possession of a firearm and that his underlying conviction was simple burglary.
Brown’s sister, Rose Brown, who lived in the apartment with her sister and the Defendant, testified that Berry removed cocaine from his pocket and placed it on an end table. Rose Brown stated that she was upset that he had brought contraband in the apartment, since there were children present. Rose Brown said that she was asleep when the Defendant was arrested that evening and that she did not hear any of the events that transpired.
Eighteen year old Lewis acknowledged that she was incarcerated in the Jetson Correctional Center for simple battery, unauthorized entry, and theft. She testified that she saw Berry put marijuana on a plate and “rocks” of cocaine on a table. However, Lewis said that she moved the cocaine to the speaker. According to Lewis, the Defendant knocked on the door and Berry left with the Defendant. A few minutes later, the Defendant ran back in the apartment with the police following. Although the police searched the Defendant, they found no contraband. However, when one of the officers found the marijuana and cocaine in the apartment, the other officer said that they would “charge” the Defendant because he had run from them.
| ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that the trial judge, Ronald Bodenheimer, should have recused himself because he was a “narcotics informant for the very law enforcement agency that built the case” against the Defendant. It was error to permit the Defendant to go to trial and be convicted by a judge who was actively engaged as a narcotics informant for the Jefferson Parish Sheriffs Office. The trial judge’s failure to recuse himself was reversible error.
The State responds that the record does not contain any evidence supporting the Defendant’s claims in this assignment of error. The State notes that the Defendant’s claims are more appropriate for post-conviction relief.
The record reflects that the Defendant did not move to recuse the trial judge. However, La.C.Cr.P. art. 672 governs the circumstances in which a judge should re-cuse himself or herself and provides:
A judge may recuse himself, whether a motion for his recusation has been filed by a party or not, in any case in which a ground for recusation exists.
On the written application of a trial judge, the supreme court may recuse him for any reason that it considers sufficient.
In the present case, there is nothing in the record that supports the Defendant’s allegations or that indicates that the trial judge should have recused himself. Although the Defendant has supported his allegations about the trial judge’s conduct with newspaper reports, both the Louisiana Supreme Court and this Court have recognized that courts of appeal have no authority to receive or review evidence not contained in the district court record. State v. Oubichon, 422 So.2d 1140, 1141 (La.1982); State v. Bibb, 626 So.2d 913, *594 924 (La.App. 5th Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188.
This Court has previously considered similar arguments concerning this trial judge in State v. Harris, 02-873, p. 8 (La. App. 5th Cir.1/28/03), 839 So.2d 291, 295, writ denied, 03-846 (La.10/31/03), 857 So.2d 474 and State v. Sandoval, 02-230, p. 9 (La.App. 5th Cir.2/25/03), 841 So.2d 977, 984, writ denied, 03-853 (La.10/03/03), 855 So.2d 308. In both cases this Court concluded that the assigned error presented nothing for review on appeal because no evidence was contained in the record to support the defendant’s allegations. This Court noted that the defendants were not without a remedy and that the claims would be more properly raised in an application for post conviction relief pursuant to La.C.Cr.P. art. 924 et seq.
Similarly, we have nothing in this record to review on appeal on this issue and the Defendant’s claim here is more appropriately raised in an application for post conviction relief. Based on the foregoing, we find that this assignment of error presents nothing for this Court to review on appeal.

ASSIGNMENT OF ERROR NUMBER TWO

The Defendant requests that this Court review the record for any errors patent on the face of the record. The State argues, in response to the Defendant’s request for review, that the Defendant’s sentence is illegally lenient and should be vacated and the case remanded to the district court for resentencing.
The record was reviewed according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
The record indicates that the Defendant was sentenced as a habitual offender on July 11, 2002 for a crime he committed on November 19, 1999. The trial court found that the Defendant had two prior felony convictions, one for attempted simple burglary in violation of La. R.S. 14:27 and 14:62 and one for attempted armed robbery in violation of La. R.S. 14:27 and 14:64. Attempted armed robbery is defined as a crime of violence. La. R.S. 14:2(13)(w). At the time of the commission of the underlying offense, a third felony offender, with a prior |Rconviction for a violent crime, was subject to a mandatory life sentence without benefit of parole, probation or suspension of sentence under LA. R.S. 15:529.1(A)(l)(b)(ii).
In Act 403 of the 2001 Regular Session, effective June 15, 2001, prior to the Defendant’s sentencing, the Louisiana Legislature amended La. R.S. 15:529.1(A)(l)(b) to read as follows:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural *595 life, without benefit of parole, probation, or suspension of sentence.
Because only one of the Defendant’s offenses are defined as a crime of violence, the Defendant would be sentenced under La. R.S. 15:529.1(A)(l)(b)(i) if the amended provision were applicable. However, the Louisiana Supreme Court has held that the changes mandated by Act 403 do not apply to sentences imposed for crimes committed before the act’s effective date. State v. Barnes, 02-2059 (La.4/4/03), 845 So.2d 354. This rule extends to habitual offender sentences imposed pursuant to La. R.S. 15:529.1. State v. Barnes. Accord, State v. Ventress, 01-1165, p. 8 (La.App. 5th Cir.4/30/02), 817 So.2d 377, 383.
In the present case, the sentencing judge, Robert Burns, following argument of counsel, off the record, determined that the Defendant should be sentenced to 19ten years imprisonment at hard labor. That is the maximum sentence under the applicable amended provision, but far less than the statutory minimum sentence under the law prior to the amendment.
The State, thereafter, filed a motion to reconsider the sentence and to correct an illegally lenient sentence. Following a hearing on the motion, the trial judge sitting at that time, Leon Cannizzaro, made the following findings: (1) that the pre-amendment law was applicable but that the amendment indicated the Legislative intent to have the more severe penalties reconsidered; (2) that the imposition of a life sentence on this Defendant for the offense of possession of cocaine was “cruel and unusual” and “far out weighs the crime;” and (3) that the sentence of 10 years, which was the maximum under the law as amended, “is more than adequate under the multiple bill law for the offense for which he has been convicted.” The trial judge denied the State’s motion. No objection was expressly made by the State. Rather, the District Attorney stated: “I would note it’s my intent to take an appeal on the matter.” The minute entry of November 14, 2002 contains a notation dated March 25, 2003 from J. Vincent, Appeals Officer for the 24th Judicial District Court, that the “D.A. has not formally requested an appeal, and that plans to do so have been abandoned.” The State asserts in its brief that there is nothing in the record to support this particular statement. However, we note that no motion for appeal was filed nor were errors assigned as required by law. Therefore we find that the State has not properly preserved this issue for appellate review.
The State argues that a reviewing court has the authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal. This Court has held that La. C.Cr.P. art. 882 is permissive and has declined to exercise the discretion provided in La.C.Cr.P. art. 882 in certain circumstances. See, State v. Williams, 02-1016, p. 14 (La.App. 5th Cir.2/25/03), 841 So.2d 936, 945-946. We find this to be a case where we decline to exercise that discretion.
This case has been considered by two different trial judges, both of whom determined that this Defendant should not be sentenced to more than ten years imprisonment at hard labor as a habitual offender. Judge Cannizzaro further found that a life sentence would be cruel and unusual and that ten years was appropriate considering all the circumstance of the case. Also, the State has not filed the necessary pleadings to place the issue of illegality, lenient sentence before the Court. Thus, we find no patent error in the sentencing that requires corrective action by this Court at this time.
*596 The record discloses several conflicts between the transcript and the minutes which must be corrected on remand. First, the transcript of October 18, 2000 reflects that the Defendant waived his right to a jury trial, whereas the minute entry does not. Next, the corrected minute entry for October 12, 2001 reflects that the matter was a “jury trial” whereas the transcript reflects that the Defendant proceeded to trial before the judge. Additionally, the original commitment of October 25, 2001 reflects that the Defendant was found guilty by a jury of “DIST/WITD OF A CDS-POSS/WITD COCAINE,” while the record reflects that the Defendant was found guilty by the trial judge of possession of cocaine. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Haynes, 96-84 (La.App. 5th Cir.6/25/96), 676 So.2d 1120, 1123. Accordingly, on remand the district court is ordered to correct the above noted minute entries and commitment to conform to the transcript.
For the reasons stated above, we affirm the Defendant’s conviction for possession of cocaine and enhanced sentence, as a third felony offender, to ten years imprisonment at hard labor without benefit of parole, probation or ^suspension of sentence and remand to the district court. On remand, the trial court is ordered to correct the minute entries and commitment to conform to the transcript.
CONVICTION AFFIRMED; SENTENCE AFFIRMED; AND CASE REMANDED.

. The Defendant’s motion for appeal was premature when it was made after conviction *592 and sentence on the offense, but before he was sentenced as a habitual offender. However, that procedural defect was cured by the subsequent resentencing. State v. Balser, 96-443, p. 7 (La.App. 5th Cir. 11/14/96), 694 So.2d 351, 354.

. Although the State filed a notice of intent to seek supervisory writs, this Court's records do not reflect that an application was filed.

. The error patent discussion addresses the status of the State's appeal.

. Trooper Smith’s testimony paralleled Trooper Flauss' testimony.